Good morning, Your Honor. Bert M. Vega for the petitioner. Good morning, counsel. This is a case of – beforehand, Your Honor, could you give me three minutes for rebuttal? You may do so. Thank you, Your Honor. This is a case of an inabstantial hearing wherein a prior counsel failed to notify the petitioner in this case of a scheduled hearing. Now, beforehand, Your Honor, I'd like to straighten out the records in this case because apparently the immigration judge did not have the true dates in his decision. The notice given to the counsel was on February – I believe it was February 3, 2000. It was not February 3, 2001, Your Honor. And the date of the scheduled hearing, which was the last one that my client received, was March 9 of 2000, not 2001. I mean, these are fundamental mistakes on the part of the immigration judge to state in his decision. Your Honor, we have here a client who has been attending the hearings in this case when he was personally notified about the hearing. And the first notice to appear, he appeared on February 8, 1999 with Mr. McArthur as counsel. Then he was personally notified of the next scheduled hearing, which was March 29, 1999. But, Mr. Vega, the problem I think you have here is the Lozada case. I'll go to that, Your Honor. There's a finding that the Lozada requirements were not met. And so I think you need to help us with that issue. Your Honor, if I may, what's the intention of the law regarding in absentia hearing? It's more of a procedural aspect that encourages people to attend the hearing. We have here a person who's trying his best to attend hearings. I mean, if he was properly notified, he would attend the hearing. But at this point, he was not properly notified. There was one year for the prior counsel to notify the petitioner in this case, but he wasn't notified. Your Honor, there are, first of all, in the Lozada case, an affidavit or some form of affidavit should be filed in order that the other counsel has opportunity to be heard. Well, Your Honor, we have here a complaint filed by the petitioner with the State Bar complaining about the action of the respondent of the prior counsel in this case, and the counsel had the opportunity to rebut it with the State Bar. Your Honor, there is no mechanism before the immigration court for a petitioner to file a complaint against a prior counsel. It is with the State Bar. Your Honor, secondly, if I may, there is a substantial compliance with the Lozada when the respondent or petitioner in this case filed a complaint with the State Bar regarding the action of the prior counsel. Your Honor, there are exceptions. You have mentioned exceptions with the Lozada case, which the brief for the respondent in this case had mentioned about failure on the part of counsel to get the file. I mean, I tried to get the file from the other counsel, but he refused to give me the file. I mean, one of the critical issues that I have is whether or not he really gave notice, a written notice to the respondent. The problem is there's no showing that Mr. Salazar actually was served and given an opportunity to defend his conduct. Your Honor, this is the letter to the State Bar. There was a coffee. I saw that there was a coffee furnished to Armando Salazar, Your Honor. So he has the opportunity to defend himself before the State Bar. Well, the letter said the letter to the Bar says C.C. Armando G. Salazar, but there's no recital, no proof that it was actually sent, and there's no notarization. The letter's not dated. How do we know that Mr. Salazar actually had an opportunity to be heard from? Your Honor, if I may, he was already notified about the motion. We tried to get the file from him to give us the file in order for us to clear, to clearly see what really happened, whether or not he wrote the respondent about the scheduled hearing. We have asked from him to give us the file, but we were not able to get the file from him. You know, Your Honor, in one of the assumptions that you had on Taveras Lopez versus INS, I mean, we tried to get the file from him, but he never gave us the file. And if we get it from the immigration court through FOIA, it takes four months for us to get the file through FOIA. So there was no way for us to comply exactly with what Lucida says, but we tried to substantially comply by writing the, or not me, but the petitioner's case, substantially comply by writing a complaint with the State Bar and giving a copy of that to Mr. Salazar. Your Honor, if we have the record, in order for us to clearly know whether or not Mr. Salazar really notified our client, but we don't have the record. And clearly, the record in this case clearly showed that he never notified the client in this case. There was no letter saying that you have to attend this scheduled date and hearing. If not, you will be deported in absentia. I once was being revoked by a judge when I said that I cannot find my client. Well, where's the letter saying that you really notified the client about it and I cannot show that? Here in this case, there was no letter by Mr. Salazar saying that he really notified the client. No, he did not. Not for three, for a year, more than a year, he has the opportunity to notify the client, but he did not. Counsel, you're down to about three minutes. You may wish to reserve. Yes, Your Honor. You may do so. Ms. Ohta, is that correct? Yes, Your Honor. Good morning, Your Honors. May it please the Court. My name is Leslie Kerr Ohta, and I'm representing the respondent in this case, John Ashcroft. Neither the I.J. nor this Court has a factual basis on which to determine the legitimacy and the substantiality of Mr. Reyes's claim of ineffective assistance of counsel. It is clear beyond Cavill that the reason there is an inadequate record before this Court is Mr. Reyes's failure to comply with the two requirements of LAZADA, which are meant to ensure that this factual record is available. That is, the requirement for an affidavit and the requirement to notify counsel. The third LAZADA requirement is not to ensure the adequacy of the record. It is for different purposes. So to monitor the bar and also to prevent collusion between an alien and his counsel. Does LAZADA have to be followed in its entirety? No, Your Honor. It does not. This Court has actually there's three. In this case, I think it's clear, it's undisputed that there was no compliance with LAZADA on those first two critical requirements which have to do with the factual record. This Court has carved out an exception to LAZADA where strict compliance is not required, where there is either substantial compliance or that this Court could look at the record as a whole and make a determination as to the legitimacy and the substantiality of the ineffective assistance of counsel claim. As I understand LAZADA, what the I.J. What the idea is, the I.J. should have before him or her enough of a record to determine whether or not this is fraudulent or whether it should go ahead with a hearing. And but LAZADA's strict requirements, we've said that so long as what we see meets generally the purposes serve that sufficient. Now, suppose the I.J. uses the wrong test. Your Honor, I'm not sure what you mean. Well, turn over to the I.J.'s hearing. It's at page 35 of the transcript. And let me go through a couple of issues with you. And the concluding paragraph, do you want to get that? Yes, Your Honor. Page 35. It's the I.J.'s opinion at the very end. Yes, Your Honor. You with me? Yes, Your Honor. Okay. The last paragraph says, And then he refers down a little later to a couple of exceptions. But certainly the strictest compliance is not the rule of the Ninth Circuit. So then you move up to the next paragraph. And it said, Now, any evidence means none. Now, the letter that went to the bar says C.C. Salazar. Now, clearly, if we were doing this the way we ought to, as Judge O'Scanlan's question pointed out, there would be some affidavit of service or something indicated other than a C.C. that he got it. But that isn't the question I'm focusing upon. First of all, the Respondent did not present any evidence. The Respondent did provide some evidence. It was a letter to the bar that said C.C. Salazar. So did the I.J. use the correct test? Apparently the I.J. rejected completely the letter to the bar on the basis there was no evidence that the counsel got it. Yes, Your Honor. I believe that the I.J. did apply the correct test and that he applied it appropriately. The issue is, is there a factual basis in the record on which one can make a determination of the legitimacy of the claim? That is what Lazada is about, to ensure that. The State Bar requirement serves a totally different function. The letter to the bar did not serve the function of the second requirement or the first requirement. That served the function of the third requirement. It is undated. There is no evidence it was mailed. But more importantly, Lazada specifically states that you must give the counsel against whom the allegations of impropriety or ineffectiveness are being made notice. You must give them, that person, an opportunity to be heard. And third, you must attach to your motion that attorney's response to the allegations. If the attorney refuses to respond to the allegations, then a report to that effect should be attached. And would you answer my question? It says there was not any evidence. And my question was, is the I.J. wrong, because there was some evidence. He's rejecting completely the letter that says C.C. Salazar. Now, can he do that? He's saying there's not any evidence. He doesn't even treat it as to whether or not it might possibly be evidence. He says there's not any evidence. Is that a proper test? Your Honor, in the context, yes, it is, Your Honor, because what the I.J. is focusing on is not whether a complaint was filed with the bar. The focus is on what can I make a decision as to whether or not this is a legitimate claim. You must put it into context. This is, as you know, an in absentia deportation. So in contrast to many of the other cases that this Court has decided where there is a record and the question is a late filing or an untimely filing of an application for suspension of deportation or a brief where there is a record, here, by its very nature, there is almost no record. We know that a new counsel filed an appearance five weeks after the order of deportation was entered. It was seven months later that the motion to reopen was finally filed. I submit, Your Honors, that both Mr. Reyes and Mr. Vega had the means, the motive and the opportunity to fully comply with Lozada. Moreover, and very importantly, I believe, is a statement in the brief that was filed to the I.J., a statement which curiously is not repeated in the brief that was filed to this Court, in which Mr. Vega makes the absolute statement that he had access to Mr. Salazar's file. And upon review, he wrote, it is, quote, pretty obvious that no letter was sent. So clearly, he had sent the brief that was submitted to the immigration judge. The record number. And there – it begins at page 3. And the – I'm sorry, I don't have the precise sentence because I did not expect that Mr. Vega would contend before this Court, which he has never contended in any pleading that he – Can you give us the number? Yes, Your Honor. Do you need more time? I'm – All right. Afterwards, why don't you put it on a piece of paper and give it to the clerk? It would be helpful if we had that. Yes, Your Honor. I mean, I have the record here, but I can't. Yes, Your Honor. The sentence is, it's pretty obvious that. My point is he had Mr. Salazar's file. Mr. Vega or a member of his office could have submitted an affidavit saying what was in the file. Were there notations of telephone calls made? Were there notations of calls not being answered? Was there indications that would have supported or undermined Mr. Salazar's statements as an officer of the Court to the immigration judge that he did give Mr. Reyes notice of this hearing? Two weeks prior to the hearing, Mr. Salazar went to examine the INS file. Clearly, he was anticipating a hearing on the merits at which Mr. Reyes would be there. Also, it appears that he was castigated by the immigration judge for waiting until the day of the hearing to file the motion to withdraw his appearance. He explained why. He didn't know until that day that Mr. Reyes was not going to be there and that it was the practice of his office to write up until the day of the hearing, you know, be in touch with the clients so the hearing could be conducted. Counsel, prior to that passage in the order that Judge Wallace addressed, there's a sentence in particular respondent has not submitted the necessary affidavit. Is it your contention that that in and of itself is sufficient to defeat Lozada or at least not comply with the law? Yes, absolutely, Your Honor. And again, Mr. Reyes contends that the fact that it was obvious that there was an attorney-client relationship should have fulfilled that purpose. In many cases, that is misquoted in Lozada. What Lozada says is the affidavit has to outline the relevant facts. Now, in Lozada, it had to do with whether or not the brief was to be filed. Thank you, counsel. Your time has expired. Mr. Vega, you have some reserve time. Thank you, Your Honor. There is an instruction here that the only method to comply with Lozada is filing an affidavit. With whom? Where will file the affidavit?   I'm asking for a response, giving a response to or making an opportunity that the other counsel will respond to it. But there is no mechanism in place for people to apply, to file a motion to reopen and then do an affidavit requesting that the other counsel have the opportunity to respond to it. I mean ---- That's part of the motion to reopen. You have to show, as a matter of record, that you did advise counsel. You could also indicate that he refused to appear or, for whatever reason, waives his rights. But it seems to me that that's something that's easily done, is it not? Your Honor, the only ---- there was a substantial compliance as far as Lozada is concerned when Respondent filed a complaint and given an opportunity, given him or Mrs. Salazar an opportunity to defend himself before the State bar. All right. But there was no affidavit. There was no affidavit, but there was no ---- There was no proof of service on Mr. Salazar. Of the ---- yes, Your Honor, of the affidavit. But the ---- but the ---- but there is evidence showing that Mr. Salazar had an opportunity to defend himself before another tribunal, which is the State bar. I mean, he could have ---- he could have ---- he knows that we have been getting the record from him, Your Honor. So in order for us to see whether or not he really have written a letter saying to that effect that my client has to be in this scheduled hearing and that if failure to appear would amount to deportation in absentia, and it has been the standard procedure in immigration court to require counsel to submit a letter saying that he really notified the petitioner in this case. But there was none. There was nothing on the record before the immigration court being presented to the immigration court that a letter was given to my client saying that he has to attend a certain date and time. My client had been religious in attending the scheduled hearing once he was actually notified. He was notified on February 8, 1999. He was notified the March 29, 1999. He was personally notified. And he attended. I mean, he has intention of attending. He has no intention of reneging or not attending the court proceeding. Were you representing your client at the time the motion to reopen was filed? Yes, Your Honor, I was. So you know about Lozada. Yes, Your Honor. So you know what the requirements are. An affidavit could have been filed but was not. An affidavit could have been filed by the person who sent the letter to the lawyer, copy of the letter to the bar to the lawyer, could have been filed. It was not. The motion to reopen, there could be evidence that Salazar was served so that he could come and appear at the motion to reopen and tell his story.  Now, they weren't done. So where does that leave us? Your Honor, if I may, I view the letter to the State Bar as substantial compliance with the way Salazar is worded, Your Honor, in the sense that the person has opportunity to defend himself before another tribunal for his failure to notify the client of the impending motion. Well, it strikes me, counsel, the law was there. Lozada was on the books. You're aware of Lozada. He had the opportunity, perhaps the obligation, to help your client prepare for the hearing. An affidavit could have been filed. An affidavit could have been filed that the letter to the bar was in fact sent to Salazar. Salazar could have been served with a motion to reopen so that he could come and appear and tell his side of the story. All of these things could have been done. They weren't done. But you want us to reverse it because counsel for the petitioner did not give us the evidence in which we could do it. Now, how do we do that? Your Honor, if I may, in reviewing the case, when I look at what he has done in filing the complaint before the State Bar, I view that as a substantial compliance with what Lozada is asking from us. And I see that as a notice on the part of the counsel, Mr. Salazar, that, yes, there is a complaint against you, been filed at the State Bar, and that you failed to notify the client in this case regarding an impending scheduled hearing, which you had an opportunity for a year. We understand your argument. Thank you, Mr. Vega. Your time has expired. The case just argued will be submitted for decision.
judges: Wallace, Hall, O'Scannlain